## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**RONALD O. THOMAS,**

        **Plaintiff,**

        **v.**                              **Case No.  04-2257-JWL**

**CITY OF BAXTER SPRINGS, KANSAS,**
**DONNA WIXON and ROBERT MYERS,**

        **Defendants.**
_____

## MEMORANDUM AND ORDER

On October 21, 2004, plaintiff filed his first amended complaint in which he alleged four separate causes of action against the City of Baxter Springs ("Baxter Springs"), Donna Wixon, the city clerk of Baxter Springs, and Robert E. Mays, the city attorney of Baxter Springs.  In count II of the amended complaint, plaintiff alleges that Baxter Springs Ordinance Number 762, Article 3, Section 3.9a ("the criminal defamation ordinance"), which criminalizes some defamation, is unconstitutional because it violates plaintiff's First and Fourteenth Amendment Rights under the United States Constitution, as well as plaintiff's rights under the Constitution of the State of Kansas, Bill of Rights § 11, and plaintiff requests declaratory and injunctive relief.  In count IV of the first amended complaint, plaintiff alleges that all three defendants committed the tort of abuse of process when they caused him to be served with the charge of criminal defamation and a notice to appear.

This matter is currently before the court on defendant Wixon's motion to dismiss counts II and IV of plaintiff's first amended complaint (Doc. # 48) for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The court finds that the criminal defamation ordinance is neither unconstitutionally vague in violation of the Fourteenth Amendment nor is it overbroad in violation of the First Amendment, and therefore, the court grants defendant Wixon's motion to dismiss count II. However, the court denies defendant Wixon's motion to dismiss count IV, as plaintiff alleged the essential elements for abuse of process.

## I.    Background[1]

Plaintiff wrote a political editorial that was critical of defendant Wixon as Baxter Springs city clerk. On March 13, 2003, after having consulted with defendant Myers, defendant Wixon commenced a criminal proceeding against plaintiff in the name of the Baxter Springs by filing a sworn criminal complaint charging plaintiff with violation of the criminal defamation ordinance, stating that plaintiff placed the political advertisement criticizing defendant Wixon knowing the information to be false and with actual malice.

Plaintiff was served with the criminal complaint along with a notice to appear, stating that a warrant for plaintiff's arrest would be issued if plaintiff did not appear in person as directed therein. Defendant Baxter Springs through defendant Myers, as city attorney, began

---

[1]    The court accepts as true all well-pleaded facts as required by the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

prosecution of plaintiff on this criminal complaint, which carried a penalty of a $2,500 fine and one year imprisonment. After charges had been brought, defendant Myers advised the municipal court that he had a conflict of interest in the criminal prosecution and that a special prosecutor would be needed to proceed. Because a special prosecutor was not obtained by June 3, 2003, the municipal court entered an order of dismissal without prejudice. Following the dismissal of the criminal prosecution, defendants Myers and Wixon conducted a press conference in which they publicly announced that the criminal charge against plaintiff would be re-filed, possibly with additional charges.

## II.      Standard

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1088 (10th Cir. 2003). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.      Analysis

3

The court finds that the criminal defamation ordinance is neither unconstitutionally vague nor overbroad, and therefore, the court grants defendant Wixon's motion to dismiss count II. However, the court finds that plaintiff has pled the essential elements of a claim for abuse of process, so the court denies defendant Wixon's motion to dismiss count IV.

## I.        Criminal Defamation

In count II of the first amended complaint, plaintiff alleges that the criminal defamation ordinance is unconstitutionally vague in violation of the Fourteenth Amendment and in violation of the First Amendment by allowing a complaint to be filed for communicating information rather than a false statement of fact, and defendant Wixon moves to dismiss this claim because an issue of law is dispositive.[2]   Plaintiff further alleges that each defendant has threatened to re-file criminal defamation charges against him.   Contending that the ordinance is unconstitutional, plaintiff requests declaratory and injunctive relief from future prosecutions.

The criminal defamation ordinance states:[3]

_____

[2]   Plaintiff also alleges that the ordinance is unconstitutional under § 11 of the Bill of Rights of the Kansans Constitution. He does not, however, make an argument as to how the criminal defamation ordinance is unconstitutional under the Kansas Bill of Rights and the court deems that contention abandoned.   *See Hinsdale v. City of Liberal, Kansas*, 2001 WL 980781, at * 16 (10th Cir. Aug. 28, 2001) (affirming district courts's conclusion that plaintiff had abandoned certain claims by failing to address those claims in response to defendant's motion for summary judgement and concluding that plaintiff's failure to respond was "fatal" to his claims).

[3]   The Baxter Springs criminal defamation ordinance at issue here was taken word for word from K.S.A. 21-4004.

(a) Criminal defamation is communicating to a person orally, in writing, or by any other means, information, knowing the information to be false and with actual malice, tending to expose another living person to public hatred, contempt or ridicule; tending to deprive such person of the benefits of public confidence and social acceptance; or tending to degrade and vilify the memory of one who is dead and to scandalize or provoke surviving relatives and friends.

(b) In all prosecutions under this section the truth of the information communicated shall be admitted as evidence.  It shall be a defense to a charge of criminal defamation if it is found that such matter was true.
(K.S.A. 21-4001)
Criminal defamation is a Class A violation
Ordinance No. 762, Art. 3, Sec. 3.9a.[4]

Facial challenges to laws are not to be taken lightly. Article III of the Constitution ensures that federal courts are not "roving commissions assigned to pass judgment on the validity of the nation's laws," but instead address only specific "cases" and "controversies." *Citizens Concerned for Separation of Church and State v. City and County of Denver,* 628 F.2d 1289, 1295 (10th Cir.1980). As the Supreme Court recently observed, "facial challenges are best when infrequent.... Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks." *Sabri v. United States,* 541 U.S. 600, 124 S.Ct. 1941, 1948 (2004) (internal citations omitted). Because facial challenges push the judiciary towards

---

[4]    While plaintiff does not attach the criminal defamation ordinance or incorporate it by reference, the court may refer to the criminal defamation ordinance because it is central to plaintiff's claim.    *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

5

the edge of its traditional purview and expertise, courts must be vigilant in applying a most exacting analysis to such claims. *Broadrick v. Oklahoma,* 413 U.S. 601, 611-12 (1973).

Defendant Wixon argues that the criminal defamation ordinance has already been found to be constitutional by the Tenth Circuit and the Kansas Appellate Court, citing *Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995) and *State v. Carson*, 95 P.3d 1042, 2004 WL 1878312 (Kan. App. Aug. 29, 2004), and asks that count II be dismissed as an issue of law is dispositive. In *Phelps*, the court addressed a facial challenge to a previous version of the Kansas criminal defamtion statute that required that a defendant act "maliciously" instead of with "actual malice" to be found guilty of criminal defamation. 59 F.3d at 1070-71. The court construed the statute to require "actual malice" and found it to be constitutional. *Id.* at 1073.

In *Carson*, the Kansas Appellate Court heard a facial challenge to the Kansas criminal defamation statue where the defendant who was being prosecuted for criminal defamation argued that the use of the word "tending" in the statute reduced the burden of proof to something less than a reasonable doubt. 2004 WL 18783212 at * 2. There, the court found that the burden of proof had not been lowered because the jury instructions required that the jury find that the state had proven its case beyond a reasonable doubt for a guilty verdict. *Id* at * 3.

Plaintiff does not dispute that the requirement of finding "actual malice" cures a potential constitutional problem or that the use of the word "tending" lowers the burden of proof to less than beyond a reasonable doubt, but instead he argues that the phrase "tending to expose another living person to public hatred, contempt or ridicule; tending to deprive such

person of the benefits of public confidence and social acceptance; or tending to degrade and vilify the memory of one who is dead and to scandalize or provoke surviving relatives and friends" is unconstitutionally vague, and plaintiff argues that the filing of a criminal complaint for "communicating... information" violates the First Amendment of the United States Constitution, because the ordinance does not require that there be a false statement of fact.

When determining whether a law is unconstitutionally vague, courts must determine whether the crime is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest," *Dodger's Bar & Grill v. Johnson County Bd. of County Comm'rs,* 32 F.3d 1436, 1443 (10th Cir. 1994) (citation omitted), and be written in a manner that does not encourage arbitrary and discriminatory enforcement, *Kolender v. Lawson,* 461 U.S. 352, 357 (1983). As such, a "statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732 (2000). "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, ... the more important aspect of vagueness doctrine is ... the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender,* 461 U.S. at 357-58.

In support of his argument that the criminal defamation ordinance is unconstitutionally vague, plaintiff cites *Ashton v. Kentucky*, 384 U.S. 195 (1996). There, the defendant was charged with the common law crime of criminal libel. The trial court charged that "criminal

libel is defined as any writing calculated to create disturbances of the peace, corrupt the public morals, or lead to any act, which, when done, is indictable." *Id.* at 198. The trial court also charged that malice is "an essential element of this offense" as well as falsity. *Id.* The defendant was convicted, and the Kentucy Court of Appeals upheld the conviction finding that the crime of criminal libel in Kentucky is "the publication of a defamatory statement about another which is false, with malice." *Id.* The Supreme Court granted *certiorari*, and set aside the conviction because the "the elements of the crime are so indefinite and uncertain that it should not be enforced as a penal offense in Kentucky." *Id.* The Supreme Court made this finding after noting that the Kentucy Court of Appeals definition of criminal libel was not unconstitutionally vague, but when looking at the vagueness of the definition of the crime, the court was required to look at the definition provided by the trial court under which the defendant was convicted, and the defendant was tried and convicted according to the trial court's understanding of Kentucky law, which defined the offense as "any writing calculated to create disturbances of the peace."

The constitutional infirmity that was present in the *Ashton* case is not present in the criminal defamation ordinance here. In *Ashton*, the Supreme Court found that a conviction of criminal libel based upon "any writing calculated to create disturbances of the peace" was too vague based upon a series of cases that had invalidated "breach of the peace" common law convictions which did not require any false communication with malice. *Id.* at 198-99. Here, however, the defamation ordinance permits conviction of a defendant "communicating to a person orally, in writing, or by any other means, information, knowing the information to be

8

false and with actual malice," which is similar to the language used by the Kentucky Appellate Court and approved by the *Ashton* court in that it calls for the finding of defamation and not just a disturbance of the peace. Moreover, the criminal defamation ordinance further limits the definition of criminal defamation in the next section, which states that the communication must be the type "tending to expose another living person to public hatred, contempt or ridicule; tending to deprive such person of the benefits of public confidence and social acceptance; or tending to degrade and vilify the memory of one who is dead and to scandalize or provoke surviving relatives and friends." This language makes the defamation ordinance even less vague than the definition given by the Kentucky Court of Appeals that was found to be constitutional by the *Ashton* court, providing even more guidance to law enforcement, which supports the finding of constitutionality under *Kolender*. Based upon the reasoning of the *Ashton* court and after considering the guidance given to law enforcement as required by *Kolender*, the court finds that the defamation ordinance is not unconstitutionally vague in violation of the Fourteenth Amendment.

Plaintiff also argues that the defamation ordinance is unconstitutional because it allows a criminal complaint to be filed for "communicating... information" not solely for a false statement of fact, violating the First Amendment as the ordinance is overly broad. "An overbroad statute is one that is designed to burden or punish activities which are not constitutionally protected, but [that] includes within its scope activities which are protected by the First Amendment." *United States v. Platte*, 401 F.3d 1176, 1188 (10th Cir. 2005) (quoting 4 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 20.8, at

263-64 (3d ed.1999)).  In support of his argument, plaintiff cites *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, (1974), where the Supreme Court held that a newspaper or broadcaster publishing defamatory falsehoods about an individual who is neither a public official nor a public figure may not claim a constitutional privilege against liability on the grounds of a privilege protecting discussion of any public issue without regard to the status of a person who is defamed.  In reaching this holding the majority began, in dictum, by expressing the belief that "[u]nder the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend on its correction not on the conscience of Judges and juries but on the competition of other ideas.  But there in no constitutional value in a false statement of fact," and plaintiff relies on this statement for the proposition that one cannot be held liable for defamation when giving an opinion.  *Id.* at 339-40.

The Supreme Court, however, in *Milkovich v. Lorain Journal Co.*, clarified the quotation relied upon by plaintiff.  497 U.S. 1 (1990).  "Read in context, though, the fair meaning of the passage is to equate the word 'opinion' in the second sentence with the word 'idea' in the first sentence. Under this view, the language was merely a reiteration of Justice Holmes' classic 'marketplace of ideas' concept," and the court found that the *Gertz* passage was not intended to create a wholesale exemption for anything labeled "opinion."  *Id.* at 18. The court reasoned that:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a

> false assertion of fact. Simply couching such statements in terms of
> opinion does not dispel these implications; and the statement, "In my
> opinion Jones is a liar," can cause as much damage to reputation as
> the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It]
> would be destructive of the law of libel if a writer could escape
> liability for accusations of [defamatory conduct] simply by using,
> explicitly or implicitly, the words 'I think.' "

*Id.* at 18-19; *see also* Restatement (Second) of Torts, § 566, Comment a (1977) (at common law, the privilege of fair comment did not extend to "a false statement of fact, whether it was expressly stated or implied from an expression of opinion").  The *Milkovich* court, however, did note that a statement on matters of public concern must be provable as false before a defamation action can be brought, as held in *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), and that there was protection for statements that cannot "reasonably [be] interpreted as stating actual facts" about an individual, citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988).  *Id.* at 19-20.

The court finds that the criminal defamation ordinance in not overboad in violation of the First Amendment because it regulates false communications whether phrased as an opinion or statement of fact, and does not burden protected speech, as it does not infringe upon the safe harbors set out in *Hepps* and *Falwell*.  Instead, the defamation ordinance requires that the defendant communicated information "knowing the information to be false."  This language insures that criminal charges will only be brought when it can be proven that the statement, whether phrased as an opinion or otherwise, is false in accordance with *Hepps*, and plaintiff does not argue that the defamation ordinance impedes parody, so the court does not need to analyze the ordinance under *Falwell*.

Based upon the reasoning above, the court finds that the criminal defamation ordinance is neither unconstitutionally vague nor overbroad, and therefore, the court finds that the criminal defamation ordinance is not facially unconstitutional.   As the criminal defamation ordinance is not facially unconstitutional, the court grants defendant Wixon's motion to dismiss count II of the first amended complaint.

## II.        Abuse of Process

In count IV of his first amended complaint, plaintiff alleges that all three defendants made an illegal and improper use of the process of the Municipal Court of Baxter Springs, Kansas, when they caused plaintiff to be served with the charge of criminal defamation and a notice to appear.   Defendant Wixon moves for dismissal of this claim because plaintiff did not allege that defendant Wixon served the criminal complaint or notice to appear on plaintiff, nor does plaintiff allege that a warrant for his arrest was issued or that he was arrested, and therefore, defendant Wixon believes that plaintiff has stated a claim for malicious prosecution, which is contained in count III of the first amended complaint, but defendant Wixon believes that plaintiff failed to state a claim for abuse of process.

The essential elements of the action for abuse of process are a knowingly illegal or improper use of the process done for the purpose of harassing or causing hardship, which resulted in damage to the plaintiff.   *McShares, Inc. v. Barry*, 266 Kan. 479 (1998) (citing *Porter v. Stormont-Vail Hospital,* 228 Kan. 641, 653-54 (1980)).   Kansas law, however, requires a plaintiff to prove the following elements to support an action for malicious prosecution: (1) that the defendant initiated, continued, or procured criminal proceedings

against the plaintiff; (2) that the defendant acted without probable cause; (3) that the defendant acted with malice-that the defendant acted for a purpose other than securing the proper adjudication of the proceedings; (4) that the proceedings terminated in favor of the plaintiff; and (5) that the plaintiff sustained damages. *Nelson v. Miller*, 227 Kan. 271, 275-76 (1980). The parties do not dispute that malicious prosecution and abuse of process differ, but the parties disagree as to what differentiates the two.

The Kansas Supreme Court has explained the differences between these torts. "In abuse of process it is said the gist of the tort is not commencing an action or causing process to issue without justification [which is essential for malicious prosecution], but misusing or misapplying process, justified in itself, for an end other than that which it was designed to accomplish." *Jackson & Scherer, Inc. v. Washburn*, 209 Kan. 321, 331 (1972) (citing Prosser on Torts, page 892); *Ahring v. White*, 131 P.2d 699, 702 (Kan. 1942) (same). That is to say that the purpose for which the process is used, once it is issued, is the only thing of importance.

Using the guidance provided by the Kansas Supreme Court and Prosser, the court finds that here, in order to properly plead an abuse of process claim, plaintiff must allege that defendant Wixon caused the issuance of a criminal complaint and summons for a purpose other than stopping plaintiff from committing defamation and that plaintiff was damaged. While it happens to be true in this case that if defendant acted for a reason other than to stop plaintiff's defamation defendant also committed the tort of malicious prosecution, as defendant would have acted without probable cause, plaintiff is not precluded from bringing an abuse of process

13

claim because the two torts may overlap. *See Simon v. Navon*, 71 F.3d 9, 15 (1st Cir. 1995) (there is an overlap between malicious prosecution and abuse of process when "a defendant who explicitly threatened to file a baseless lawsuit solely for the purpose of forcing the plaintiff's action in an unrelated matter, and then did commence suit, could be liable for either tort."); *Whelan v. Abell*, 953 F.2d 663, 670 (D.C. Cir. 1992) ("abuse of process is conceptually different from, but overlaps with, malicious prosecution."); *Chen v. United States*, 674 F. Supp. 1078, 1088-89 (S.D.N.Y. 1987) (finding that abuse of process and malicious prosecution may overlap).

As plaintiff alleges that defendant Wixon made a knowingly illegal and improper use of process while causing plaintiff to be served with the charge of criminal defamation and a notice to appear for the purpose of stopping plaintiff's exercise of his First Amendment rights, resulting in damage to plaintiff's person and property, the court finds that plaintiff has stated the essential elements for abuse of process, and therefore, the court denies defendant Wixon's motion to dismiss count IV of plaintiff's first amended complaint.

## IV.    Conclusion

The court finds that the criminal defamation ordinance is neither unconstitutionally vague in violation of the Fourteenth Amendment nor is it overbroad in violation of the First Amendment, and therefore, the court grants defendant Wixon's motion to dismiss count II. However, the court denies defendant Wixon's motion to dismiss count IV, as plaintiff alleged the essential elements for abuse of process.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Wixon's motion to dismiss (Doc. # 48) is granted in part and denied in part.   Specifically, the court grants defendant Wixon's motion to dismiss count II, but the court denies her motion to dismiss count IV.

**IT IS SO ORDERED** this 10th day of May, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

15